**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | **8:05CR20** |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **ABEL PEREZ,** | ) | |
| | ) | |
| Defendant. | ) | |

      This matter is before the court on the motions of defendant Abel Perez (Perez) to suppress. Perez seeks to suppress evidence seized from a search of his person and from a search of a 2005 Chevrolet Suburban near 1715 Vinton Street, in Omaha, Nebraska, on November 29, 2004 (Filing No. 10). Perez seeks to suppress evidence seized from a search of Apartment No. 2, 828 South 29th Street, in Omaha, Nebraska, on December 14, 2004 (Filing No. 12). Perez seeks to suppress evidence seized from a search of his person and a search of a 1974 Buick Apollo near 6305 Center Street in Omaha, Nebraska, on December 14, 2004, and to suppress any of Perez's statements made that day (Filing No. 14). Perez is charged in the Indictment with a conspiracy to distribute and possess with intent to distribute in excess of 50 grams of methamphetamine during the period of November 20, 2004 through December 14, 2004 (Count I) in violation of 21 U.S.C. § 846. Perez is also charged with the possession of a firearm during the drug trafficking offense set forth in Count I (Count II) in violation of 18 U.S.C. § 924(c). Perez is further charged in a criminal forfeiture count (Count III) in violation of 21 U.S.C. § 853 setting forth certain currency seized in this matter.

      An evidentiary hearing was held on the motions on March 11, 2005. At the hearing, the court heard testimony from Officer Mark Lang (Officer Lang) of the Omaha Police Department (OPD). The court also received into evidence the following exhibits: Exhibit 1 - an OPD Rights Advisory Form (12/14/04); Exhibit 2 - an OPD Permission For Search Form (12/14/04); and Exhibit 3 - (submitted post hearing) an OPD Rights Advisory Form (11/30/04).

A transcript of the hearing (TR.) was prepared and filed on March 21, 2005 (Filing No. 23). There was no post-hearing briefing apart from the submission of Exhibit 3 on March 22, 2005.

## FINDINGS OF FACT

On November 29, 2004, Officer Lang received information from an informant that there was drug trafficking occurring at Apartment No. 2 (the far north apartment), 1715 Vinton Street, Omaha, Nebraska (TR. 6-7; 42). The informant told Officer Lang two individuals were involved, an older Hispanic male and a younger Hispanic female using the moniker of Peaches (TR. 7). Officer Lang and other OPD officers established a surveillance of the location (TR. 7). 1715 Vinton Street has a butcher shop on the main floor and apartments on the second floor (TR. 7; 42). There is an outside door that leads to the second level, and the officers noted a number of individuals enter that door (TR. 7).

The officers surveilled the location for approximately an hour and noticed a Chevrolet Suburban pull into the parking lot and Perez got out and went into the apartment level door (TR. 16; 42).

Officer Lang decided to conduct a "knock and talk" at the second level apartment (TR. 7; 42-43). A "knock and talk" is a procedure where police officers, who do not have a search warrant, go to a location and seek to get a consent to search the premises (TR. 43). Shortly after the Chevrolet Suburban arrived, Officer Lang and other OPD officers entered the apartment level stairway and went to Apartment No. 2, the far north apartment (TR. 8; 43). Officer Lang was in civilian clothes but was wearing an outer police vest with bold yellow lettering of "Omaha Police," as were the other officers (TR. 8). Officer Lang knocked on the apartment door which was answered by the defendant Perez (TR. 8). Officer Lang produced his police badge, and, in English, told Perez that he (Lang) and the others were police officers and asked Perez if they could step into the apartment and talk with Perez (TR. 9). Perez opened the door further and told the officers they could come in (TR. 9).

When the officer stepped inside the doorway into the living room, Officer Lang asked Perez if he was the resident of the apartment (TR. 10). Perez stated he was not, so Officer Lang asked the three other individuals in the living room area if any of them resided at the

2

apartment (TR. 10). No one responded (TR. 10). Officer Lang asked who actually lived at the apartment, and the individuals stated they did not know (TR. 10). Officer Lang asked all four of the individuals for some identification (TR. 10). Some had identification and others verbally identified themselves (TR. 11). When the officers were obtaining the identification, Officer Lang observed a small bag of marihuana on top of the refrigerator in the kitchen area which was open to the living room (TR. 12). Also, in a bathroom with an open door near the apartment's front door, the officer observed a paraphernalia pipe on the counter (TR. 12). The officers observed ammunition rounds on top of an entertainment center in the living room (TR. 12). The officers asked each of the individuals for permission to search their persons (TR. 12). Methamphetamine paraphernalia was found on an individual named Fox, and Fox was arrested (TR. 12).

Officer Lang asked one of the individuals, a female named Sharlina Coleman, if she lived in the apartment (TR. 13). She was adamant that she did not (TR. 13). Officer Lang asked if she had a nickname, and Coleman told Officer Lang that she had the nickname of Peaches (TR. 13). Officer Lang told the individuals that, based on what was found on Fox and based upon what they saw in plain view, the officers were going to secure the apartment and get a search warrant (TR. 13-14). At about that time, a female by the name of Teresa Grangeno came to door and asked for a person named Jose Rodriguez (TR. 14). She was asked for identification and asked for permission to search her person (TR. 14). She stated she had methamphetamine on her person and was arrested (TR. 14). The individuals in the apartment were then detained in the apartment while Officer Lang left, wrote an affidavit for a search warrant, obtained a search warrant for the apartment from a judge, and returned (TR. 15). Approximately an hour and a half elapsed in the meantime (TR. 15). The search warrant was executed and various items were seized including methamphetamine, currency, and a firearm (TR. 15-16).

Following the search of the apartment, Officer Lang asked the individuals in the apartment if they had any vehicles at the location (TR. 16). When asked by Officer Lang, Perez stated he had a blue Chevrolet Suburban in the parking lot (TR. 16). Officer Lang asked Perez for permission to search the vehicle, and Perez gave permission (TR. 16).

Officer Lang asked where the keys were, and Perez told Officer Lang the keys were in Perez's pocket (TR. 16-17). Officer Lang retrieved the keys from Perez's pocket, and Officer Lang and another officer went outside and searched the Suburban (TR. 17). Inside the center console was found a loaded Berretta handgun and a lease agreement for the Suburban in Perez's name (TR. 17). The individuals were arrested and taken to OPD Central Station (TR. 17).

Prior to an interview with Perez, Officer Lang talked with Sharlina Coleman, also known as Peaches (TR. 20). Coleman told Officer Lang she had been staying at the apartment for about four days and had been receiving money for drugs for a person named Santana (TR. 21). Coleman stated Santana was in partnership with Perez, and Perez had a nickname of "Goofy" (TR. 22). After Perez was taken to OPD Central Station, he was interviewed by Officer Lang (TR. 18). Using an OPD Advice of Rights Form (Exhibit 3; TR. 26), Officer Lang advised Perez of his Miranda rights, Perez waived them, and agreed to an interview (TR. 17-18). The advice of rights and interview were conducted in English and Perez appeared to understand the dialogue, did not ask for an attorney, did not ask that the interview be terminated, and was not induced to provide a statement (TR. 24-29). Subsequently, Perez was booked and released after posting bond (TR. 29).

Officer Lang's next contact with Perez was on December 14, 2004 (TR. 29). On that date, Officer Lang was involved in a drug investigation involving a trailer home located at Lot 36, 6305 Center Street, Omaha, Nebraska (TR. 29-30). The focus of the investigation was Jodene Wiblishouser who was selling drugs (TR. 30). When confronted, Wiblishouser stated her supplier of methamphetamine was a Hispanic male named Goofy who drove a vehicle which matched the vehicle driven by Perez on November 29, 2004 (TR. 30-31). Officer Lang had Wiblishouser call Perez and ask for Perez to bring some methamphetamine to her trailer (TR. 31). Approximately a half hour later, Perez appeared at Wiblishouser's trailer (TR. 31). When he appeared, Officer Lang and another OPD officer detained him (TR. 32). Perez was asked if the officers could search his person, and Perez agreed (TR. 32). In Perez's shirt pocket was found methamphetamine (TR. 32). Also, Perez was asked if the officers could search the vehicle Perez arrived in, and Perez agreed (TR. 33-34). More methamphetamine

was located in the vehicle (TR. 34). Perez was arrested and taken to OPD Central Station (TR. 34).

At Central Station, Perez was again interviewed by Officer Lang (TR. 34). Officer Lang advised Perez of the *Miranda* rights, which Perez acknowledged and waived (TR. 34; Exhibit 1). The interview was conducted in English and Perez appeared to understand the questioning, did not ask for an attorney, and did not ask to terminate the interview (TR. 38). Perez was not threatened, promised anything, or coerced to give a statement (TR. 38). Perez told Officer Lang that he (Perez) lived at Apartment No. 2, 828 South 29th Street, Omaha, Nebraska, and drove a blue Chevrolet Suburban which was parked in the area of 48th and Center Streets in Omaha (TR. 36). Officer Lang asked Perez for permission to search Perez's residence and the Suburban (TR. 35-36). Perez gave the permission to search and signed an OPD Permission For Search Form for the residence and Suburban (TR. 36-37; Exhibit 2). The residence and Suburban were searched resulting in the seizure of additional evidence (TR. 37).

## LEGAL ANALYSIS
### A. Detention of Perez and Search of Suburban Vehicle
### On November 29, 2004 at 1715 Vinton Street (Filing No. 10)

Perez asserts his detention by OPD officers while they were at Apartment No. 2, 1715 Vinton Street, and the searches of Perez's person and his Chevrolet Suburban on November 29, 2004, were illegal, and any evidence seized should be suppressed. It should be noted that Perez has not established standing in the apartment searched nor has he challenged the issuance and validity of the state court search warrant issued for the apartment.

Before the people in the apartment were detained, they were asked for consent to search their persons. Each one of the individuals in the apartment gave their consent, and nothing was found on Perez. Further, there was no evidence presented that Perez's consent to search his person was anything but voluntary. Perez has inferred that he did not understand English and was unable to provide a voluntary consent. However, the only evidence in the testimony was that Officer Lang conversed with Perez in English only, that Perez appeared

to understand the dialogue, and Perez responded appropriately to questions asked and to the conversation in general.  This was true not only at the apartment, but later at OPD Central Station during an interview, and subsequent contact with Perez on December 14th to include additional interviews.  There was no evidence presented that Perez did not understand the English language at the times in issue even though Perez requested and the court accommodated Perez in having a Spanish language interpreter translate the evidentiary hearing by remote telephone hook-up.  I find that Perez understood the English language at all material times in issue.

Perez was detained as a matter of an investigative detention.  **Terry v. Ohio**, 392 U.S. 1 (1968).  An investigative detention must be supported by a reasonable articulable suspicion of criminal activity.

> [The Eighth Circuit] has summarized the standards used to consider whether reasonable suspicion exists as follows:
> The standard of articulable justification required by the fourth amendment for an investigative, **Terry**-type seizure is whether the police officers were aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warranted suspicion that a crime was being committed.  In assessing whether the requisite degree of suspicion exists, we must determine whether the facts collectively establish reasonable suspicion, not whether each particular fact establishes reasonable suspicion.  The totality of the circumstances -- the whole picture -- must be taken into account.  We may consider any added meaning certain conduct might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals.  It is not necessary that the behavior on which reasonable suspicion is grounded be susceptible only to an interpretation of guilt, however, the officers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a "hunch" or on circumstances which describe a very broad category of predominantly innocent [people].

**United States v. Beck**, 140 F.3d 1129, 1136 (8th Cir. 1998) (internal citations and quotations omitted); **see also Illinois v. Wardlow**, 528 U.S. 119, 124-25 (2000).

While Officer Lang went to obtain the search warrant, the four individuals in the apartment were detained by the remaining officers.  The detention was based upon the

observances in plain view of the marihuana and the ammunition, the drug paraphernalia found on one of the individuals, methamphetamine found on an individual coming to the door looking for someone inside, the information from a reliable confidential informant that the apartment was being used to sell drugs, and the acknowledgment by one of the individuals that she had a nickname of Peaches as noted by the informant. Perez was not illegally detained pending the arrival of the search warrant.

Once the search warrant arrived and a search of the premises was conducted, there was probable cause for the arrest of Perez and the other occupants of the apartment. However, the search of Perez's Suburban was done with his consent. Officer Lang asked for and received Perez's permission to search the Suburban. A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion. The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." ***Ohio v. Robinette,*** 519 U.S. 33, 40 (1996). There was no evidence that the consent to search by Perez was anything but voluntary.

Accordingly, Perez's motion to suppress evidence seized from him on November 29, 2004, or any statements he made to Officer Lang on November 29-30, 2004 (Filing No. 10) should be denied.

### B. Searches Near 6305 Center Street on December 14, 2004 (Filing No. 14)

Perez asserts he was detained and searched illegally on December 14, 2004. Officer Lang detained Perez by a trailer home near 6305 Center Street when Perez arrived in response to a telephone call from Wiblishouser who placed an order for methamphetamine. The call was made at the request of the police officers and they monitored the telephone call. While Wiblishouser only knew Perez by the name of Goofy, Coleman had previously identified Perez as using the name of Goofy during the incidents of November 29-30, 2004, previously discussed. Having knowledge of Perez's previous drug trafficking activities on November 29-30, 2004, having recognized Perez when he arrived at Wiblishouser's trailer home area, and Perez having arrived in response to Wiblishouser's request for more methamphetamine,

Officer Lang had probable cause not only to detain Perez, but to place him under arrest. While the search of Perez's person and automobile driven to Wiblishouser's trailer home would be fully justified as incident to arrest and based on probable cause, Perez consented to the search of his person and automobile. There is no evidence to dispute the evidence that Perez voluntarily consented to the search of his person and automobile. Again, communications with Perez were in the English language, and there is no evidence that Perez did not understand the discourse with the police officers. Perez's motion to suppress the evidence seized in the vicinity of 6305 Center Street (Filing No. 14) is without merit and should be denied.

### C. Searches of Apartment at 828 South 29th Street and Chevrolet Suburban on December 14, 2004 (Filing No. 12)

Perez asserts the search of his apartment and vehicle on December 14, 2004, was illegal. After his arrest near 6305 Center Street, Perez was taken to OPD Central Police Station where he was again interviewed by Officer Lang. There Perez waived his *Miranda* rights and provided information to Officer Lang. Further, Perez provided written permission for OPD officers to search his apartment at 828 South 29th Street and his Chevrolet Suburban. There is no evidence that Perez's statements to the police and his permission to search was anything other than voluntary. Perez provided the permission to search after he was advised of and waived his *Miranda* rights. He was not coerced or induced to make a statement or provide a consent to search. Perez's motion to suppress (Filing No. 12) is without merit and should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP** that Perez's motions to suppress (Filing Nos. 10, 12 and 14) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this

Report and Recommendation.  Failure to timely appeal or object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 13th day of May, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge